IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | | |
|---|---|---|
| MOLLY A. MILLS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:13cv14 |
| | ) | |
| CAROLYN W. COLVIN, | ) | By:    Joel C. Hoppe |
| Acting Commissioner | ) | United States Magistrate Judge |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Molly A. Mills ("Mills") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381 – 1383(f). On appeal, Mills argues that the Commissioner improperly assessed her residual functional capacity ("RFC") by failing to incorporate her cognitive limitations and thus incorrectly determined that she could perform other work. The Court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3), and this case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). After carefully reviewing the record and the briefs of the parties, I find that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence, and I recommend that the Commissioner's decision be affirmed.

I. Procedural History

Mills was born on June 14, 1988 (Administrative Record, hereinafter "R." 38, 157), and at the time of the ALJ's decision was considered a "younger person" under the Act. 20 C.F.R. § 416.923(c). Mills is a college graduate (R. 37) and has no prior work history (R. 41, 168-73). On August 18, 2010, Mills filed an application for SSI. (R. 157-62.) She alleged a disability onset

date of her birth, June 14, 1988, for learning disability, arthritis, diabetes, and foot deformity. (R. 157, 175.)

The Commissioner rejected Mills's application both initially and upon reconsideration. (R. 18.) On May 15, 2012, the ALJ held an administrative hearing at which Mills was represented by counsel. (R. 32-80.) In an opinion dated June 8, 2012, the ALJ found that Mills had bilateral lower extremities impairments, diabetic neuropathy, chronic dislocation of the right patella, and learning disorder, which qualify as severe impairments pursuant to 20 C.F.R. § 416.920(c). (R. 20.) None of these impairments met or equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20-21.) The ALJ found that Mills had the RFC to perform sedentary work[1] requiring standing or walking for at least two hours and sitting for six hours of an eight hour workday; occasionally climbing ramps and stairs, balancing, stooping, and crouching; and no climbing, kneeling, or crawling. (R. 23.) She must avoid exposure to hazardous machinery and unprotected heights and is limited to work involving simple, routine, and repetitive tasks in a low stress environment and occasional decision-making and changes in the work setting. (*Id.*) The ALJ found that Mills had no past relevant work. (R. 27.) Based on the testimony of a Vocational Expert ("VE"), the ALJ found that a significant number of jobs, including document preparer and direct mail clerk, existed in the national economy. (R. 28.) Accordingly, the ALJ determined that Mills was not disabled under the Act. (*Id.*) The Appeals Council denied Mills's request for review (R. 1-3), and this appeal followed.

---

[1] Work is defined as "sedentary" if it involves lifting no more than 10 pounds at a time and occasionally lifting items like docket files, ledgers and small tools. 20 C.F.R. § 916.967(a). Such work involves sitting and occasional walking and standing. *Id.*

2

II. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final determination that a person is not entitled to disability benefits. *See* 42 U.S.C. § 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence," *id*., but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled.'" *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a) (governing adult claims for SSI). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and if not (5) whether he or she can perform other work. *See* 20 C.F.R. § 416.920(a)(4); *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

### III. Discussion

Mills argues that the ALJ's assessment of her RFC did not accurately incorporate her cognitive limitations. (Pl. Br. 2.) It follows, according to Mills, that the hypothetical posed to the VE was similarly deficient and the ALJ's finding that Mills could perform other work was in error. Mills does not dispute the ALJ's findings regarding her exertional limitations. Accordingly, the discussion will primarily address evidence and argument concerning Mills's nonexertional symptoms.

A. Facts

When Mills applied for disability in August 2010 she was a student at Averett College ("Averett"). She had transferred to Averett after completed three years of community college, where she earned a 3.2 Grade Point Average ("GPA"). (R. 39.) During her first year as a student at Averett, which was actually her junior year of college, Mills received Bs in Sociology and Psychology, a C in an unspecified class, a D in English, and an F in Political Science. (R. 244.)

Staff in the educational support department at Averett believed Mills may have a learning disability and referred her to Franklin E. Russell ("Russell"), Ph.D., a licensed clinical psychologist. (R. 243-44.)

Russell interviewed Mills twice in May 2010 and prepared a written psychological and educational assessment. (R. 243-48.) Mills told Russell that she reads, watches television, talks to friends on the phone, assists with a local Girl Scout troop, and enjoys going outside. (R. 245.) Based on his interviews, Russell found "[n]othing out of the ordinary" regarding Mills's memory and that her recent memory ability was good. (R. 246.) Her judgment was good, and her insight was fair. (*Id.*)

Russell administered the Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV"). The results showed a verbal comprehensive index of 91, perceptual reasoning index of 67, working memory index of 83, processing speed index of 79, and a full scale IQ of 75. (R. 246.) Mills's IQ score placed her in the borderline range of intellectual functioning. (*Id.*) Russell noted the Mills exhibited strength in "language skills, especially those that pertain to knowledge that is obt[a]ined by memorization and provide by structured education programs." (R. 246-47.) She had a lesser ability to perform tasks that required verbal abstract reasoning, and she showed significant weakness in non-verbal abstract reasoning and spatial abilities. (R. 247.) Her visual processing ability was average. (*Id.*) Mills scored in the low borderline range for tasks that required conceptual abilities and in the borderline range on a subtest that assessed overlapping abilities. (*Id.*)

Russell also administered the Woodcock-Johnson III Test of Achievement, which tests reading, writing, and math skills. (*Id.*) The test results showed that Mills had fourth grade oral

language skills, third grade writing skills, ninth grade broad reading ability, and sixth grade broad math and written language skills. (*Id.*)

Russell concluded that Mills had a Learning Disorder Not Otherwise Specified. (R. 247-48.) This impairment affected her ability to conceptualize abstract information and would likely cause problems in areas that require more than rote memorization and acquisition of knowledge. (R. 248.) She required "specific instruction on how to apply information in new situations and in new ways." (R. 247.) Mills had a significant weakness in taking in and processing oral information and using that information to complete tasks. (*Id.*) Because of this weakness in oral language, Russell recommended that Mills record lectures so that she could replay them at a pace slower than that of the classroom. (R. 248.)

On November 11, 2010, Dr. Mark Stowe, M.D., examined Mills for consultation and prepared a report that primarily addressed physical conditions. (R. 260-62.) Dr. Stowe noted reports from Mills and her mother that Mills has difficulty following instructions. (R. 261-62.) Dr. Stowe observed that Mills was easily distracted, and he diagnosed an apparent learning disability. (*Id.*)

On December 17, 2010, Howard S. Leizer, Ph.D., a state psychologist, opined that Mills probably had a learning disorder that affected her concentration, persistence, and pace. (R. 89.) Leizer noted that Mills was attending college and appeared capable of performing simple, non-stressful tasks. (R. 90.)

In May 2011, Julie Jennings, Ph.D., a state psychologist, noted that Mills had a full scale IQ of 75, placing her in the borderline range. (R. 99.) Mills reported moderate to marked difficulty in activities of daily living. (*Id.*) In findings identical to those of Leizer, Jennings noted that Mills had a probable learning disorder that may affect her concentration, persistence,

and pace, but, considering that she was attending college, she appeared capable of performing simple, non-stressful tasks. (R. 103-04.)

At an administrative hearing before the ALJ held on May 15, 2012, Mills testified that she graduated from Averett in December 2011, earning a GPA of 2.4. (R. 38-39.) As a full-time student, she had averaged five classes each semester. (R. 42.) During her studies at Averett, Mills attended classes, took notes by hand, wrote papers on the computer, studied, and made oral presentations to the class. (R. 41-43.) Mills reported that she was "pretty good" with a computer and used Microsoft Word, PowerPoint, and Facebook. (R. 43.) Tutors assisted Mills in her coursework, and in some classes she obtained class notes from peers or teachers. (R. 41, 46, 48-49.) Mills was allowed extra time to complete tests. (R. 49.) According to Holly Kilby, Director of Academic Support at Averett, because of Mills's Learning Disorder Not Otherwise Specified, she was afforded note taking assistance, extended testing time, devices to record lectures, and clarification of exam directions. (R. 294.)

Since Mills graduated from Averett, she has spent between two and four hours a day looking for a job. (R. 46, 48.) She also helps her parents with chores, reads, listens to music, and attends church where she sings in the choir. (R. 44, 48.) Mills prepares meals from written instructions. (R. 52.) Although she has a drivers license, Mills testified that she drives infrequently because she gets lost easily, and her parents drove her to school. (R. 39.)

Amy Mills, who is Mills's mother, testified that Mills was unable to find her way driving a car and that her parents drove her to school.(R. 56-57, 60-61.) Additionally, Mills could not prepare meals, primarily because she did not pay attention to the task. (R. 59-60.)

In examining the VE at the administrative hearing, the ALJ presented hypothetical individuals of Mills's age and education who could perform work at either the light or sedentary

7

exertion level.[2] (R. 64-65.) At the sedentary level, the hypothetical individual could never climb ladders, ropes, or scaffolds, crawl, or kneel and occasionally climb ramps or stairs, balance with the assistance of a hand-held device, stoop, or crouch. (*Id.*) The individual must avoid exposure to workplace hazards, including unprotected heights and hazardous machinery. (*Id.*) The ALJ limited the hypothetical individual to standing for up to 15 minutes before she would need to sit. (R. 65-66.) She would be further limited to performing simple, routine, and repetitive tasks in a low stress work environment. (R. 66.) Additionally, her job duties would require only occasional decision making and changes in the workplace setting. (*Id.*)

The VE testified that an individual with these abilities and limitations could work as a document preparer, direct mail clerk, and election clerk, all of which existed in the national economy. (R. 65-67.) On examination by Mills's attorney, the VE testified that someone who required "ample supervision" would be unable to perform these jobs. (R. 68.) The VE further testified that the tasks required of an election clerk may change, but a mail clerk or document preparer would do "the same thing all of the time." (R. 72-74.)

B. Analysis

"The 'RFC is an assessment of the individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.'" *Morgan v. Barnhart*, 142 Fed. Appx. 716, 720 (4th Cir. 2005) (unpublished) (quoting Social Security Ruling 96-8p). The ALJ's assessment of a claimant's RFC must be based on medical evidence and other evidence in the record, including a claimant's daily activities. *Id.*; 20 C.F.R. §

---

[2] In the written opinion, the ALJ found that Mills could work at the sedentary exertion level. At the administrative hearing and in her brief, Mills, through counsel, did not challenge the ALJ's findings or hypothetical as far as they set out her physical impairments and resulting limitations, including working at the sedentary level. (*See* R. 79; Pl. Br. 2.) Accordingly, I will confine the discussion to the hypothetical involving a sedentary level.

416.929(c). The Commissioner's determination of a claimant's RFC must be supported by substantial evidence. 20 C.F.R. § 416.920(a)(4). After determining a claimant's RFC, the Commissioner may rely upon the testimony of a VE, at step five, in considering whether, "despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy." *Walker v Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *accord Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). To be relevant or helpful, the VE's opinion must take into account all of the claimant's abilities and limitations. *Walker*, 889 F.2d at 50-51. Thus, the ALJ's hypothetical to the VE must set forth all of the claimants' impairments as established in the record. *Id.* Put simply, the ALJ's hypothesis must "fit the facts." *Swaim v Califano*, 599 F.2d 1309, 1312 (4th Cir. 1979).

Mills argues that the record does not support the ALJ's determination of her RFC. In particular, Mills takes issue with the ALJ's finding that she could perform simple, non-stressful tasks. (Pl. Br. 2.) I find, however, that the ALJ's assessment of Mills's RFC is supported by substantial evidence in the record.

Reviewing Russell's psychological report, the ALJ noted that the psychologist found that Mills had normal memory, good judgment and common sense, and fair insight. (R. 26.) On the WAIS-IV, Mills achieved a perceptual reasoning index of 67, processing speed index of 79, working memory index of 83, and full scale IQ of 75. (*Id.*) Russell diagnosed a Learning Disorder Not Otherwise Specified. (*Id.*) Russell found that Mills had a significant weakness in perceptual and verbal abstract reasoning and in her ability to take in, process, and use verbally presented information to complete a task. (*Id.*) Additionally, Russell determined that Mills would need specific instructions on how to apply new information in new ways and settings. (*Id.*) The

9

ALJ gave his opinion great weight. (*Id.*) The ALJ also noted that Averett provided accommodations to Mills to assist her academically. (R. 25.)

As to Mills's activities of daily living, the ALJ found that Mills's testimony was generally credible in that it was generally consistent with other evidence in the record. (R. 24.)[3] The ALJ noted that Mills had a driver's license, but did not drive by herself because she got lost easily. (R. 23.) She sang in a church choir and attended weekly practices. (*Id.*) On a daily basis, Mills read, listened to music, helped her parents with chores, and looked for a job. (*Id.*) She prepared meals, but needed to follow written directions each time. (*Id.*) Mills could perform simple arithmetic, and she graduated from Averett in December 2011 with a 2.4 GPA. (*Id.*)

In the RFC portion concerning nonexertional limitations, the ALJ accurately incorporated the findings in Russell's psychological report and Mills's activities of daily living. The ALJ limited Mills to work that required "simple, routine, and repetitive tasks in a low stress environment involving only occasional decision-making and changes in the work setting." (R. 23.) No evidence in the record contradicts the ALJ's assessment. Considering the medical evidence and Mills's activities of daily living, including her performance at college, I find that substantial evidence supports the ALJ's assessment of Mills's RFC. Furthermore, I find that the hypothetical the ALJ posed to the VE accurately stated his determination of Mills's RFC.

Mills also argues that the ALJ substituted his opinion for that of the VE. In support of this argument, she asserts that the testing conducted by Russell and the accommodations afforded by Averett were indicative of academic performance, but did not translate to findings about her vocational abilities. Indeed, the VE noted that Mills required accommodations to gain

---

[3] The ALJ discredited the testimony of Mills's mother because it was inconsistent with other evidence in the record. Mills has not assigned error to this determination, and, in any event, I find that the ALJ's assessment is amply supported by the record.

knowledge, but developing vocational skills requires a person to gain knowledge and "actually do[] something." (R. 78.) While the VE's other statements are somewhat unclear, she primarily noted that Mills has no record of employment to gauge whether she had the ability to apply knowledge to develop a vocational skill. Put another way, the VE wondered whether Mills's cognitive impairments would prevent her from developing vocational skills.

Certainly, this is a crucial issue, but it is not within the expertise of the VE. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis, and prognosis, what [he or she] can still do despite impairment(s) and [his or her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). It is not the province of the VE to weigh medical evidence or to opine that a medical condition could cause impairment.[4] *See Fisher v. Barnhart*, 181 Fed. Appx. 359, 365 (4th Cir. 2006) ("Vocational experts are not experts in psychology who are qualified to render opinions on how the claimant's ailments might be reflected in his capabilities; rather, they are employed experts who know the mental and physical demands of different types of work."). The VE's duty is to consider the hypothetical individual described by the ALJ and opine whether jobs exist in the national economy that this individual could perform. *See Walker*, 889 F.2d at 50. The hypothetical individual is based on the ALJ's determination of a claimant's RFC. The ALJ determines a claimant's RFC based on his or her review of the entire record, including a claimant's medical history.

---

[4] It is also not the province of the ALJ to substitute his or her opinion on the severity of a claimant's impairment for that of a medical professional. *See Grimmett v. Heckler*, 607 F. Supp. 502, 503 (S.D. W.Va. 1985) (citing *McLain v. Schweiker*, 715 F.2d 866, 869 (4th Cir. 1983); *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)).

11

Here, the ALJ adopted Russell's findings as to Mills's psychological impairment, the accommodations afforded by Averett, and Mills's report of her daily activities, and he incorporated them into his determination of Mills's RFC. Mills has not cited any cases or regulations that prohibit consideration of psychological testing for educational purposes as one component in determining a person's RFC. Moreover, authority exists to support a position contrary to that urged by Mills.

In assessing the severity of a mental disorder, the regulations provide, "[l]imitations in concentration, persistence, or pace are best observed in work settings, but may also be reflected by limitations in other settings. In addition, major limitations in this area can often be assessed through clinical examination or psychological testing. Whenever possible, however, a mental status examination or psychological test data should be supplemented by other available evidence." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(3). In this case, Mills had no work history. Instead, as the regulations instruct, the ALJ relied upon the clinical examination and psychological testing performed by Russell and evidence of Mills's academic performance and activities of daily living. Although Appendix 1 specifically concerns whether a claimant meets a listing (step three), the regulation also notes, "[a]n assessment of your RFC compliments the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets nor is equivalent in severity to a listed mental disorder." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A). Accordingly, I find that the ALJ did not err in basing his hypothetical, in part, on information contained in Russell's psychological report.

IV. Conclusion

A reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence. Based on this record I find that substantial evidence exists. The ALJ properly assessed Mills's RFC and formulated a hypothetical that accurately depicted Mills's cognitive limitations as presented by Russell's findings, the accommodations afforded by Averett, Mills's daily activities, and other evidence in the record. Accordingly, I recommend that the Commissioner's decision be AFFIRMED.

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: May 5, 2014

Joel C. Hoppe
United States Magistrate Judge